UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

RONALD J. BROWN,

                Plaintiff,

    -against-                                          6:11-CV-00016 (LEK/GHL)

INVESTIGATOR ROBERT KOPEK, *et al.*,

                Defendants.

---

## MEMORANDUM-DECISION and ORDER

**I.    INTRODUCTION**

Plaintiff Ronald J. Brown ("Plaintiff") filed this action for money damages on January 6, 2010, in response to his arrest for criminal possession of a weapon in the third degree, in violation of New York Penal Law § 265.02 (McKinney). Complaint ("Compl.") (Dkt. No. 1) at 1. Plaintiff brought this action naming twelve Defendants, including: Investigator Robert Kopek #4593 ("Investigator Kopek"); the Utica Police Department; Mayor of Utica David R. Roefaro ("Mayor Roefaro"); the Oneida County Public Defenders' Office ("public defenders' office"); public defender Leland D. McCormac, III, Chief Trial Counsel ("Leland McCormac III"); public defender Patrick J. Marthage, First Assistant ("Patrick Marthage"); public defender Adam P. Tyksinski ("Adam Tyksinski); the Oneida County District Attorneys' Office ("district attorneys' office"); District Attorney Scott D. McNamara ("Scott McNamara"); District Attorney Michael Nolan ("Michael Nolan"); Judge John S. Balzano, Oneida County Court Judge sitting in Utica, NY ("Judge Balzano"); and Barry M. Donalty, Supervising County Court Judge ("Judge Donalty") (collectively, "Defendants"). Id. Plaintiff has made numerous allegations against

1

Defendants individually in addition to alleging a conspiracy among Defendants to commit civil rights violations. See id. Presently before the Court are Defendants' Motions to dismiss Plaintiff's Complaint, which were filed on February 3, 2011 and February 24, 2011. Motion to Dismiss ("Mot. Dismiss 14") (Dkt. No. 14); Motion to Dismiss ("Mot. Dismiss 15") (Dkt. No. 15); Motion to Dismiss ("Mot. Dismiss 17") (Dkt. No. 17). Plaintiff filed a Response in opposition to the motion to dismiss on March 13, 2011. Dkt. No. 20 ("Opp'n M.D.") For the reasons discussed below, Defendants' Motions to dismiss are granted.

## II.   BACKGROUND

Plaintiff states that his February 21, 2010 arrest stems from events beginning in 2008 when Plaintiff's ex-convict neighbor, Anthony Washington, began harassing him. See Compl. at 5. Plaintiff claims that he notified law enforcement officials "forty plus" times of harassment by his neighbor, but that he was provided no aid. See id. at 5. Approximately six weeks before his arrest, Plaintiff states that he personally delivered a letter to Mayor Roefaro's office, explaining the situation with his neighbor and arguing that it is irresponsible for the government to let a convict out of jail. Id. at 3-4. Plaintiff alleges that Mayor Roefaro did nothing to aid his problem, and was offended by Plaintiff's letter. Id.

On February 21, 2010, Plaintiff was arrested for criminal possession of a weapon in the third degree. Id. at 3. Plaintiff was found in possession of a concealed pipe, which Plaintiff claims he procured against his neighbor in self defense. Id. at 3, 6. Plaintiff claims that he called the police after the neighbor kicked Plaintiff's dog "thirty-two feet in the air." Id. at 5-6. As a result, Plaintiff states that he had no choice but to use the pipe in self-defense while waiting for the police to arrive. Id. at 6. Plaintiff voluntarily produced the pipe at the request of the arresting

Case 6:11-cv-00016-LEK-GHL   Document 23   Filed 08/24/11   Page 3 of 18

officer.  Id. at 3.  Investigator Kopek was the officer that filled out the arrest report and initial criminal complaint.  See id. at 3; Opp'n M.D. at 13.  Plaintiff accuses Investigator Kopek of lying in his arrest report and criminal complaint.  Compl. at 6.  Upon his arrest, Plaintiff states that he was taken to "Utica Lockup."  Id. at 7.  Once there, Plaintiff alleges that his shirt and shoes were removed, and that the officers opened "the outside door" to let cold air in to "see how far they could drop [Plaintiff's] body temperature."  Id.

Plaintiff accuses the public defenders' office of conspiring with the district attorneys' office to willingly disregard "a lawful order from a Oneida County Court Judge" to appoint a public defender for Plaintiff, and instead placed him in a thirty-day medical hold for evaluation "to shut [him] up."  Id.  Plaintiff claims that Scott McNamara and Michael Nolan (collectively, "individually named district attorneys") attempted to force Plaintiff to sign a waiver of his civil rights prior to a grand jury hearing.  Id. at 4.  Plaintiff did not sign the letter and accuses the individually named district attorneys of limiting his testimony before the grand jury and allowing the grand jury to see him display anger.  Id. at 4-5.  Plaintiff alleges that Judge Donalty had knowledge that Plaintiff was forced to sign the waiver because he disregarded Plaintiff and did not "look surprised" when informed of the incident.  See id. at 5.  Finally, Plaintiff alleges that Judge Balzano "rule[d] against [t]he Constitution of [t]hese United States."  Id.

Based on the foregoing facts and allegations, Plaintiff claims that all Defendants have been "constitutionally irresponsible[]," and accuses Defendants of "abuse of power, wrongful imprisonment, obstruction of justice, and dereliction of duty."  Id. at 9, 13-14.  Plaintiff seeks $50,000,000 in damages.  Id. at 12.

Defendants move to dismiss Plaintiff's Complaint with respect to Investigator Kopek,

3

Mayor Roefaro, and the Utica Police Department based on qualified immunity to liability for civil damages liability, and for failure to state a claim upon which relief can be granted pursuant to FED. R. CIV. P. 8(a)(2) and FED. R. CIV. P. 12(b)(6).  Defendants' Memorandum in Support of Motion to Dismiss ("Mem. Supp. M.D. 14") (Dkt. No. 14-3) at 4-6.  Defendants move to dismiss Plaintiff's Complaint with respect to the public defenders' office, Leland McCormac III, Patrick Marthage, Adam Tyksinski, the district attorneys' office, Scott McNamara, and Michael Nolan for lack of subject matter jurisdiction under FED. R. CIV. P. 12(b)(1), and for failure to state a claim upon which relief can be granted under FED. R. CIV. P. 12(b)(6).  Defs.' Memorandum in Support of Motion to Dismiss ("Mem. Supp. M.D. 15") (Dkt. No. 15-1) at 2, 4.  Finally, Defendants move to dismiss the Complaint with regard to Judge Balzano and Judge Donalty based on the judiciary's absolute immunity to suits for money damages, and on Eleventh Amendment immunity to lawsuits against officials in their official capacity.  See Defs.' Memorandum in Support of Motion to Dismiss ("Mem. Supp. M.D. 17") (Dkt. No. 17-1) at 3.

### III.   STANDARD OF REVIEW

When considering a motion to dismiss for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1), a court "must accept as true all material factual allegations in the complaint, but [it is] not to draw inferences from the complaint favorable to plaintiffs." J.S. *ex rel.* N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004).  A court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits." Id.

Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV.

P. 8(a)(2). This statement "must provide the defendant with 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "To survive a motion to dismiss" for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 500 U.S. 544, 570 (2007)). A case should not be dismissed unless the court is "satisfied that the complaint cannot state any set of facts that would entitle the plaintiff to relief." Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 300 (2d Cir. 2003).

When considering a motion to dismiss, a court must accept all well-pleaded factual allegations made by the non-moving party as true and "draw all inferences in the light most favorable to the non-moving party's favor" to determine whether they plausibly give rise to relief. In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007); see also Iqbal, 129 S. Ct. at 1949-50. Any legal conclusions, deductions, or opinions couched as factual allegations are not accorded a presumption of truthfulness. See Iqbal, 129 S. Ct. at 1951-52; NYSE Specialists, 503 F.3d at 95. "The issue is not whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims.'" Gant v. Wallingfor Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995) (quoting Weisman v. LeLandais, 532 F.2d 308, 311 (2d Cir. 1976)). "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*." Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994); see also Easton v. Sundram, 947 F.2d 1011, 1015 (2d Cir. 1991). The Court must liberally construe pro se submissions, McPherson v. Coombe, 174 F.3d 276, 280 (2d

Cir. 1999), and interpret them "to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). At the same time, "pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).

IV.   DISCUSSION

    A. Subject Matter Jurisdiction

Defendants move to dismiss Plaintiff's Complaint with respect to the public defenders' office, Leland McCormac III, Patrick Marthage, Adam Tyksinski, the Oneida County District Attorneys' Office, Scott McNamara, and Michael Nolan, based on a lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), because the Plaintiff's complaint does not contain any statement of federal subject matter jurisdiction. See Mem. Supp. M.D. 15 at 2. Defendants assert that Leland McCormac III, Patrick Marthage, and Adam Tyksinski (collectively, "three individually named public defenders") and the public defenders' office are not subject to jurisdiction under 42 U.S.C. § 1983. Mem. Supp. M.D. 15 at 5-6. Although only a portion of Defendants raise subject matter jurisdiction as a defense in Mem. Supp. M.D. 15, the Court must consider subject matter jurisdiction with regard to all defendants to an action even if it is not raised by the parties. Wachovia Bank v. Schmidt, 546 U.S. 303, 305 (2006).

"Plaintiffs bear the burden of 'showing by a preponderance of the evidence that subject matter jurisdiction exists.'" APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003) (quoting Lunney v. United States, 319 F.3d 550, 554 (2d Cir. 2003)). The showing must be made "affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998) (citing

6

Norton v. Larney, 266 U.S. 511, 515 (1925)).  When considering a motion to dismiss for lack of subject matter jurisdiction, "the allegations of the complaint should be construed favorably to the pleader."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

The Supreme Court has held that § 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"[1]  Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).  Thus, in order to properly plead a § 1983 claim, a plaintiff must allege a specific violation of a constitutional right, privilege, or immunity infringed when invoking § 1983, and a defendant's personal involvement in the violation of that right.  See Albright, 510 U.S. at 271; Haley v. Pataki, 106 F.3d 478, 482 (2d Cir. 1997) (quoting Dwares v. City of New York, 985 F.2d 94, 98 (2d Cir. 1993)); see also Graham v. Connor, 490 U.S. 386, 294 (1989); Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).

A plaintiff must also show that those accused acted under "color of state law" for the defendant to be subject to suit pursuant to § 1983.  See 42 U.S.C. § 1983; see also Polk County v. Dodson, 454 U.S. 312, 315 (1981).  Acting under "color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"  West v. Atkins, 487 U.S. 42, 49 (1988) (quoting United States v. Classic, 313 U.S. 299, 326 (1941)).  It is well established a defendant is under "color of state law" in a § 1983 suit when acting in his official capacity, or

---

[1] 42 U.S.C. § 1983 provides that: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . for redress."

exercising responsibilities pursuant to state law, and an abuse of their official position occurs. See West, 487 U.S. at 49-50; see also Monroe v. Pape, 365 U.S. 167, 172 (1961); Parratt v. Taylor, 451 U.S. 527, 535-36 (1981).

### 1. Investigator Kopek, Mayor Roefaro, and Utica Police Department

Plaintiff alleges that Investigator Kopek lied in his arrest report and criminal complaint detailing the reasons for Plaintiff's arrest, but he does not specifically state which statements were false, or, more generally, claim that he was falsely arrested. Compl. at 3. Even if Plaintiff's claim is that Defendant Kopek falsely arrested him, the facts as described by Plaintiff do not support such a contention. Under New York law, criminal possession of a weapon in the fourth degree is defined as possession of "any dangerous or deadly instrument or weapon with intent to use the same unlawfully against another." McKinney's Penal Law § 265.01 (2). A pipe is considered a dangerous instrument in the context of the weapon possession charge when used in certain circumstances. People v. Jones, 196 A.D.2d 889, 890 (N.Y. App. Div. 1993) (holding that the object does not need to be inherently dangerous to be considered a dangerous instrument; it need only be readily capable of causing physical injury in certain circumstances). Therefore, the Complaint actually shows that Investigator Kopek had probable cause to arrest Plaintiff.

Based on the analysis above and the lack of additional supporting facts, the Court holds there is no alleged constitutional violation by Investigator Kopek. Even though Investigator Kopek acted under color of state law, if sued in his individual capacity, the claim must be dismissed for lack of subject matter jurisdiction.

However, Investigator Kopek is being sued in his official capacity as a law enforcement officer, and is immune from suit because he is not a person within the meaning of § 1983. The

Supreme Court has held that any state official sued for money damages in his or her official capacity are not considered "persons" in the context of § 1983 suits. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). In Will, the Supreme Court held that:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity, or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Will v. Michigan Dept. of State Police, 491 U.S. 58, 66 (1989). Since the State has not waived its immunity under the Eleventh Amendment and Congress has not acted to override the State's immunity, the Complaint must be dismissed with respect to Investigator Kopek. Furthermore, all other claims against Defendants sued in their official capacities - Mayor Roefaro, Judge Balzano, and Judge Donalty - are barred and dismissed for the same reasons.

Mayor Roefaro is not subject to suit in his individual capacity under § 1983 because Plaintiff has not alleged any constitutional violations. The extent of the allegations against Mayor Roefaro is that he led a conspiracy to falsely arrest Plaintiff on the weapon possession charge, and that he did not provide any aid when Plaintiff brought a complaint to his office. Compl. at 3-4. Plaintiff supports the conspiracy charge by stating that Mayor Roefaro did not do anything when Plaintiff personally delivered a letter to him, and that he is "in charge of the police." Id. These facts do not support the claim that Mayor Roefaro was involved in a conspiracy to falsely arrest Plaintiff. See Johnson v. City of New York, 669 F. Supp. 2d 444, 450-51 (S.D.N.Y. 2009) (quoting

Dahlberg.v. Becker, 748 F.2d 85, 93 (2d Cir. 1984)). "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." Dwares v. City of N.Y., 985 F.2d 94, 100 (2d Cir. 1993), overruled on other grounds, Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993); see also Angola v. Civiletti, 666 F.2d 1, 4 (2d Cir. 1981) (noting that § 1983 claims are "so easily made and can precipitate such protracted proceedings . . . that . . . detailed fact pleading is required to withstand a motion to dismiss"). Since both allegations are conclusory and are not supported by any well pleaded facts in the Complaint, proper jurisdiction has not been asserted under § 1983 against Mayor Roefaro.

Summary judgment on Plaintiff's § 1983 claim is also warranted in favor of the Utica Police Department, as it is well settled that "a police department is an administrative arm of the municipal corporation," and cannot be sued under § 1983 "because it does not exist separate and apart from the municipality and does not have its own legal identity." Baker v. Willett, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) (citations omitted). The Utica Police Department is therefore also entitled to summary judgment in its favor with respect to Plaintiff's malicious prosecution claim.

### 2. Public Defenders' Office and Three Individually Named Public Defenders

Plaintiff alleges that the public defenders' office conspired with the individually

named district attorneys to deny his right to counsel, and instead put him in thirty-day medical hold. Compl. at 7. This claim is conclusory and the Complaint provides no factual support for the allegation. Plaintiff's placement in medical hold for thirty days alone does not support a claim that his constitutional right to counsel was denied, and there is nothing in the Complaint that would show Plaintiff did not receive legal assistance throughout his stay in medical hold. See Compl. at 7. Plaintiff asserts no constitutional violation for the purposes of raising subject matter jurisdiction under 42 U.S.C. § 1983, and the claims must be dismissed.

Even if Plaintiff successfully asserted a constitutional violation, the facts outlining the incident are too vague to properly conclude that the public defenders' office or the three individually named public defenders acted under color of state law. The Supreme Court has held that "a public defender does not act under color of state law when performing a lawyer's traditional functions as a counsel to a defendant in a criminal proceeding." Polk County, 454 U.S. at 325 (concluding that a public defender did not act under color of state law while exercising independent professional judgment in a criminal proceeding). The Court stated that a public defender may act under color of state law when they perform particular administrative or investigative functions, such as hiring and firing. Id.

In the present case, Plaintiff alleges that the public defenders' office and the three individually named public defenders denied him the right to counsel and instead put him in thirty day medical hold. Id. These acts, if true, cannot be considered within the scope of a public defender's traditional functions as counsel in a criminal proceeding.

However, the only reason given to explain why he was in medical hold was to "shut [Plaintiff] up." Compl. at 7. Plaintiff provides no report of the nature of his experience in medical hold, or whether the three individually named public defenders visited him in medical hold to provide counsel. The fact that Plaintiff was placed in medical hold does not necessitate, or support, a conclusion that he was denied his right to counsel. Even if Plaintiff's Complaint is liberally construed, it does not adequately allege that the public defenders' office and the three individually named public defenders acted under color of state law, and therefore these Defendants are not subject to federal jurisdiction under § 1983.

### 3. District Attorneys' Office and Individually Named District Attorneys

The Supreme Court has held that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." Imbler v. Pachtman, 424 U.S. 409, 430 (1976). With respect to prosecutorial activities "intimately associated with the judicial phase of the criminal process," absolute immunity applies with full force. Id. The Supreme Court declined, however, to consider whether absolute immunity would apply in the prosecutor's "role of an administrator or investigator, rather than that of advocate." Id. A prosecutor's duties

> . . . in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom. A prosecuting attorney is required constantly, in the course of his duty as such, to make decisions on a wide variety of sensitive issues. These include questions of whether to present a case to a grand jury, whether to file an information, whether and when to prosecute, whether to dismiss an indictment against particular defendants, which witnesses to call, and what

> other evidence to present. Preparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence. At some point, and with respect to some decisions, the prosecutor no doubt functions as an administrator rather than as an officer of the court.

Id. at 430 n.33. Defendants must have acted outside the scope of their prosecutorial authority to have acted under color of state law. Id. Plaintiff's Complaint does not contain any factual allegations that would suggest that the district attorneys' office or the individually named district attorneys acting outside the scope of their prosecutorial role.

Plaintiff alleges that the individually named district attorneys attempted to make him sign a waiver of his civil rights prior to testifying before the grand jury with respect to his arrest. Compl. at 4; NY Crim Proc. Law § 190.50 (McKinney). Plaintiff states that when he refused to sign the waiver, the individually named district attorneys told him that he could not testify unless he signed. Id. Plaintiff further claims that while he began to read the waiver to the grand jury, rather than sign it, the individually named district attorneys had security guards remove him from the grand jury room. Id.

These facts are insufficient to assert a claim that Plaintiff's right, as a citizen of New York State, to testify before a grand jury as the accused was denied. The nature of the waiver form that the individually named district attorneys attempted to have Plaintiff sign is unclear from the Complaint. However, in order for the accused to testify in front of the grand jury, the accused must (1) give the prosecutor timely notice of his intent to testify, and (2) waive his right to immunity as a grand jury witness. NY Crim Proc. Law § 190.50(5)(b) (McKinney). Therefore, Plaintiff was required to waive his immunity as a grand jury witness to testify. Based on the Complaint, Plaintiff states that he did not sign

the waiver provided, and he does not assert that he had waived the grand jury witness immunity. Compl. at 4.  Even if Plaintiff's Complaint is liberally construed, the Court cannot conclude that the district attorneys' office or the individually named district attorneys violated Plaintiff's statutory right to testify before the grand jury or acted outside the scope of their prosecutorial role.  Therefore, the district attorneys' office and the individually named district attorneys are entitled to immunity and are not subject to jurisdiction under § 1983.

### 4. Judge Balzano and Judge Donalty

Judge Balzano and Judge Donalty are also not subject to a 42 U.S.C. § 1983 suit. "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright, 21 F.3d at 501; see also Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006).

Plaintiff does not accuse Judge Balzano or Judge Donalty of any specific constitutional violation.  See Compl.  Plaintiff's claims consist mainly of vague accusations pertaining to Judge Balzano's decisions while presiding over Plaintiff's underlying criminal case and Judge Donalty's reaction to Plaintiff's complaints about the grand jury incident.  Id.  Specifically, Plaintiff alleges that Judge Balzano "rule[d] against the United States Constitution," that the judge did not believe Plaintiff had a right to protect himself against his neighbor by possessing a pipe, and that the judge erred in failing to dismiss the criminal case.  See id. at 5, 9.  Plaintiff accuses Judge Balzano of being a "tyrant" and "corrupt" for ruling a particular way in the underlying criminal case. See id. at 13.  The extent of the claims against Judge Donalty are: "I stood in his

courtroom and told him how the District Attorneys had tried to fool me into signing away my civil rights. Didn't bother him at all. I think he said, 'That's not my problem...' Jury is still out on him. We'll let you know." Id.  Even when construed liberally in favor of Plaintiff, these accusations are too vague because they do not specify what the judges' decisions were or how the judges violated the Plaintiff's constitutional rights.  Therefore, the Court does not have subject matter jurisdiction over the claims against Judge Balzano or Judge Donalty.

### B. Defendants' Entitlement to Immunity

Defendants argue that Investigator Kopek, Mayor Roefaro, and the Utica Police department are entitled to qualified immunity, and that Judge Balzano and Judge Donalty are entitled to absolute immunity.  See Mem. Supp. M.D. 14; Mem. Supp. M.D. 17. Even if the Court has jurisdiction over Investigator Kopek, Mayor Roefaro, the Utica Police, Judge Balzano, and Judge Donalty, Plaintiff must show that Defendants are not entitled to immunity to the present suit.  Because immunity protects an official from liability and suit under § 1983, the validity of such a defense "should be determined at an early stage" in the litigation.  See Shmueli v. City of New York, 424 F.3d 231, 236 (2d Cir. 2005).

#### 1. Investigator Kopek and Mayor Roefaro

Investigator Kopek, Mayor Roefaro, and the Utica Police Department assert entitlement to dismissal of all claims based on qualified immunity.  See Mem. Supp. M.D. 14 at 6.  It is well established that for executive officials, qualified immunity represents the norm, rather than absolute immunity.  See Harlow v. Fitzgerald, 457 U.S.

800, 807 (1982). The Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818. The Supreme Court reasoned that "bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery." Id. at 817-18.

Two questions must be addressed to determine whether an official is entitled to qualified immunity: whether 1) "taken in the light most favorable to the party asserting the injury . . . the facts alleged show the officer's conduct violated a constitutional [or statutory] right;" and 2) the constitutional right was "clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001); see also Pearson v. Callahan, 555 U.S. 223 (2009); Davis v. Scherer, 468 U.S. 183, 197 (1984). "A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue." Davis, 468 U.S. at 197. A right is considered "clearly established" when, objectively, "the contours of the right . . . [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); see also Harlow v. Fitzgerald, 457 U.S. 818-19.

In the present case, Plaintiff has not demonstrated any violation of a constitutional right by Investigator Kopek or Mayor Roefaro. Plaintiff claims that Investigator Kopek lied in his criminal complaint against Plaintiff for criminal possession of a weapon in the third degree. Compl. at 3. Plaintiff does not identify any specific statement that is

16

untrue, and provides no supporting facts for this allegation. Id. As explained above, any claim that Plaintiff was falsely arrested is precluded because the facts pleaded actually demonstrate that Defendant Kopek had probable cause to take Plaintiff into custody. Plaintiff cannot allege a violation of a clearly established constitutional or statutory right, and therefore Investigator Kopek is entitled to qualified immunity from suit.

Plaintiff's allegations against Mayor Roefaro consist of the following: that he was a "kingpin[]" in a conspiracy to arrest Plaintiff, that he did not address Plaintiff's complaint regarding Mr. Washington, and that Mayor Roefaro took offense to the letter Plaintiff personally delivered to his office. Compl. at 3. These claims are vague, and not supported by any well pleaded facts in the Complaint. Therefore, the allegations are not entitled to an assumption of truth. See Iqbal, 129 S. Ct. at 1951-52. Plaintiff has not shown that Mayor Roefaro violated any clearly established constitutional or statutory right.

### 2. Judge Balzano and Judge Donalty

The absolute immunity of "judges, in their judicial functions, now is well settled." See Harlow, 457 U.S. at 807 (internal citation omitted). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" Stump v. Sparkman, 435 U.S. 349, 356-57 (1978) (quoting Bradley v. Fisher, 80 U.S. (1 Wall.) 335, 351 (1871). When the immunity of a judge is at issue, their jurisdiction over matters must be construed broadly, because some of the difficult questions a judge must address relate to his or her jurisdiction. See Stump, 435

U.S. at 356; Bradley 80 U.S. (1 Wall.) at 352.

The Complaint does not state any specific constitutional violations by either Judge Balzano or Judge Donalty, and does not call into question any of the two judges' specific decisions or orders.  There is no reason why Judge Balzano could not have presided over the underlying criminal case.  The incident in Plaintiff's underlying criminal case occurred in Utica, and Judge Balzano is a Oneida County Court Judge sitting in Utica.  See Compl. at 2-3.  It is alleged that Plaintiff appeared before Judge Donalty to plead constitutional violations by the district attorneys' office with regard to the grand jury incident in Utica County Court.  Compl. at 13.  Judge Balzano and Judge Donalty both acted within their jurisdiction, and are entitled to absolute immunity to all claims.  Therefore, the claims against Judge Balzano and Judge Donalty must be dismissed.

### V.	CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motions to Dismiss (Dkt. No. 14, 15, 17) are **GRANTED**; and it is further

**ORDERED**, that the Clerk serve copies of this Order on the parties.

**IT IS SO ORDERED.**

DATED:	August 24, 2011
	Albany, New York

*[signature]*
Lawrence E. Kahn
U.S. District Judge